UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KINGSBURY NAVIGATION LTD., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-1851 |
| | § | |
| KOCH SUPPLY & TRADING, LP, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court is the Motion to Compel Arbitration (Doc. 10) filed by Defendant Koch Supply & Trading, LP. For the reasons explained below, the Court concludes that the motion should be granted.

## I.    Background

The dispute underlying this case involves three business entities, two signatories to a maritime contract, and one contested arbitration clause. The three business entities are Plaintiff Kingsbury Navigation, Ltd. ("Kingsbury"), owner and operator of the Motor Tanker SEADANCER (the "Seadancer"); Defendant Koch Supply & Trading, LP ("KS&T"); and nonparty Koch Shipping, Inc. ("Koch Shipping"). Plaintiff Kingsbury and nonparty Koch Shipping were signatories to a November 21, 2007, ASBATANKVOY tanker voyage charter party (the "Charter") (Doc. 10-1); Defendant KS&T was not.

Pursuant to the Charter, Kingsbury agreed to Koch Shipping's use of the Seadancer to transport fuel from the Baltic region to the U.S. Gulf Coast. (Compl. ¶¶ 9, 12, Doc. 1). As is customary in the tanker trade, Kingsbury entered into a follow-on contract with another entity for employment of the Seadancer after the discharge of its cargo under the Charter, (Doc. 1 ¶ 13),

1 / 6

but Koch Shipping's failure to discharge the cargo in a reasonable time contributed to the cancellation of that follow-on contract, (Doc. 1 ¶¶ 20, 23, 28). Consequently, on or about April 2, 2008, Kingsbury invoked the Charter's arbitration clause to pursue maritime arbitration against Koch Shipping in New York, seeking damages both for the delay in discharging the Seadancer's cargo and for lost profits from the cancelled follow-on contract. (Doc. 1 ¶¶ 26-27). That arbitration clause, the same one that is the subject of the motion before this Court, reads as follows:

> Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York or in the City of London whichever place is specified in Part I of this charter pursuant to the laws relating to arbitration there in force …. Until such time as the arbitrators finally close the hearings either party shall have the right by written notice served on the arbitrators and on an officer of the other party to specify further disputes or differences under this Charter for hearing and determination. Awards made in pursuance to this clause may include costs, including a reasonable allowance for attorney's fees, and judgment may be entered upon any award made hereunder in any Court having jurisdiction in the premises.

(Doc. 10-1, Part II ¶ 24). During the arbitration proceedings, Koch Shipping agreed to pay Kingsbury $827,116.05 in demurrage and detention charges, plus interest, resulting from the delay, but opposed Kingsbury's demand for $2,025,639.00 in lost profits suffered as a result of the cancellation of the follow-on contract. (Final Award 3, 7, June 24, 2011, Doc. 10-2). The arbitration panel agreed with Koch Shipping, denying Kingsbury's claim for lost profits, (Doc. 10-2 at 17), and the U.S. District Court for the Southern District of New York subsequently denied Kingsbury's petition to vacate the final arbitration award and granted Koch Shipping's cross-motion to confirm the award, *Kingsbury Navigation Ltd. v. Koch Shipping Inc.*, No. 11-CV-6575-DAB, 2012 WL 2345170, at *7 (S.D.N.Y. June 14, 2012).

During arbitration, Kingsbury first learned of the role of KS&T, an affiliate of Koch Shipping, in the delayed discharge of cargo. (Doc. 1 ¶ 29). According to Kingsbury, testimony

from an employee of KS&T, which was not a party to the arbitration proceedings, revealed that it was actually KS&T that caused the delay by using the Seadancer as "cheap floating storage" and inducing Koch Shipping to breach the Charter. (Pl.'s Resp. 4-7, Doc. 13) (internal quotation marks omitted). As a result, Kingsbury initiated this action against KS&T for its "unlawful interference with the [Charter]." (Doc. 1 ¶ 19).

KS&T's motion does not address the substance of this claim; rather, it addresses the procedure for its adjudication: by litigation in this Court or by arbitration.

II.    **Discussion**

It is undisputed that Kingsbury and Koch Shipping signed a Charter with an arbitration clause providing that "[a]ny and all differences and disputes … arising out of [the] Charter shall be put to arbitration," (Doc. 10-1, Part II ¶ 24); thus, the only question is whether that arbitration clause also applies to Kingsbury's claim against nonsignatory KS&T. A nonsignatory to an arbitration agreement may invoke that agreement "only in rare circumstances." *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002). One such circumstance exists under the theory of equitable estoppel:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (internal quotation marks and emphasis omitted) (adopting the "intertwined-claims" test formulated by the Eleventh

Circuit). The rationale behind this rule is simple fairness: "[The plaintiff] cannot, on the one hand, seek to hold the nonsignatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a nonsignatory." *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 361 (5th Cir. 2003) (quoting *Grigson*, 210 F.3d at 528).

In this case, Kingsbury, claims that "KS&T willfully interfered with the timely discharge of the SEADANCER in order to use the ship as storage [for its own commercial purposes]," (Doc. 1 ¶ 21), and seeks compensation for lost profits under the follow-on contract, (Doc. 1 ¶ 35). Kingsbury further argues that its claim (A) neither relies on the terms of the Charter (B) nor raises allegations of substantially interdependent and concerted misconduct by KS&T and Koch Shipping, thus preventing KS&T from invoking the Charter's arbitration clause under the theory of equitable estoppel. A reading of Kingsbury's own filings, however, proves this position to be untenable.

### A.      *Terms of the Written Agreement*

Kingsbury's argument regarding the first prong of the intertwined-claims test is that its "claim against KS&T did not arise out of the [Charter]; *it arose in spite of it* out of [KS&T's] obstruction of the discharge of the vessel." (Doc. 13 at 15) (emphasis added). But the discharge of the vessel was governed by the terms of the Charter, and Kingsbury's claim rests on the proposition that the delay in discharge was impermissible under those terms:

> 10.      The [Charter] did not contain any provisions whatsoever allowing use of the vessel as floating storage for the cargoes to be laden onboard. It included only provisions for the loading, transportation and delivery of the cargo at the destinations to be nominated by Charterer.
> ….
> 19.      To accomplish this unlawful interference with the [Charter]—i.e. use of [Kingsbury's] vessel as interim floating storage for its own commercial purposes—KS&T required [Koch Shipping] (an affiliated corporation that

regularly and closely collaborates with KS&T) to stall, delay, and postpone the SEADANCER and to "park" the vessel with the 75,000 metric tons of M-100 onboard in order to take advantage of the "cheap" demurrage rate of the vessel under the [Charter].

20.    [Koch Shipping] readily complied with the unlawful demands of KS&T to breach and withhold good faith performance of the [Charter] and actually failed to arrange for the discharge of the cargo remaining onboard the SEADANCER within a reasonable time.

(Doc. 1 ¶¶ 10, 19-20). In sum, Kingsbury claims that KS&T "frustrate[ed] the timely discharge of the vessel," (Doc. 1 ¶ 23), and such timeliness cannot be determined without reference to the Charter. Kingsbury cannot have it both ways: it cannot argue that the use of the Seadancer as floating storage was wrongful *because* it violated the terms of the Charter, and, at the same time, that KS&T's role in these acts was impermissible *in spite of* the Charter. Kingsbury inadvertently acknowledges the incoherence of this logic, stating that "KS&T had decided to use the SEADANCER as floating storage, *an impermissible use under the Charter*." (Doc. 13 at 5-6) (emphasis added). Accordingly, Kingsbury's claim "makes reference to or presumes the existence of the written agreement, [it] arise[s] out of and relate[s] directly to the written agreement, and arbitration is appropriate." *Grigson*, 210 F.3d at 527.

**B.    Interdependent and Concerted Misconduct**

Alternatively, under the second *Grigson* prong, arbitration can be compelled "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." 210 F.3d at 527. Once again, whether KS&T and Koch Shipping's alleged misconduct was "substantially interdependent and concerted" can be answered by reference to Kingsbury's own words. Kingsbury's original complaint against Koch Shipping was based on the "alleg[ation] that it suffered damages as a result of [Koch Shipping's] deliberate

choice to use the [Seadancer] as floating storage outside of the terms of the Agreement." *Kingsbury Navigation*, 2012 WL 2345170, at *2. During the arbitration proceedings, Kingsbury learned that "it was actually KS&T" that was "calling the shots" by "decid[ing] to use the SEADANCER as 'cheap floating storage' " despite the fact "that there was no contractual right" to do so. (Doc. 13 at 5). It is this information that forms the basis of Kingsbury's current complaint, and, given that the two complaints allege the same wrongful acts perpetrated jointly by the signatory and nonsignatory, it is difficult to see how the alleged misconduct was not interdependent and concerted. Moreover, Kingsbury's attempt to draw a distinction between the two by arguing that one is grounded in tort and the other, in contract, is unavailing. *See Grigson*, 210 F.3d at 529 (compelling arbitration where claims of tortious interference with contract were "intertwined with, and dependent upon, the [terms of the contract]"). Therefore, application of equitable estoppel is also warranted under the second *Grigson* prong, and arbitration is appropriate.

**III.    Conclusion**

"The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (collecting cases). In this case, there is but one issue, and that issue should be decided by arbitration, not litigation. Accordingly, it is hereby

**ORDERED** that the Motion to Compel Arbitration (Doc. 10) is **GRANTED** and this case is **DISMISSED**.

SIGNED at Houston, Texas, this 24th day of August, 2013.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE

6 / 6